STATE OF IOWA, Appellant, v. ONE CERTAIN BUICK SEDAN et al., Appellees.

No. 40189.

FEBRUARY 11, 1930.

*John Fletcher*, Attorney-general, *Neill Garrett*, Assistant Attorney-general, and *Paul Smith*, County Attorney, for appellant.

*Hughes, Taylor, O'Brien & Faville*, for appellees.

KINDIG, J.—The action here involved arose under Chapter 97 of the 1927 Code. So far as material, the sections thereof are:

"2000. The term 'conveyance' as used in this chapter shall embrace * * * automobiles, motor vehicles, * * * and all other forms of conveyances except railway, street, and interurban cars."

"2001. A peace officer who discovers that intoxicating liquor has been or is being transported in violation of law, shall summarily arrest the offender and likewise seize said liquor and the conveyance used to effect said transportation."

Succeeding sections outline the procedure after seizure, in order that there may be a forfeiture of the conveyance.

"2010. Upon the filing of said information, the procedure for the forfeiture of said conveyance shall be the same as is provided for the forfeiture of intoxicating liquors seized under search warrant, except in the following particulars: * * *

"3. *Right to contest.* The written claim of the owner or other claimant shall allege, under oath, that said conveyance was not being employed, when seized, in the unlawful transportation of intoxicating liquors, or that if it was being so employed such use was without the knowledge or consent, directly or indirectly, of said claimant.

"4. *Presumption.* If it be made to appear that any intoxicating liquors were found in or on said conveyance when it was seized, it shall be presumed that the conveyance was, when seized, employed with the knowledge and consent of all claimants, in the unlawful transportation of such liquors. * * *

"6. *Judgment.* A judgment of forfeiture shall direct that said conveyance be sold by the sheriff as chattels under execution, and a certified copy of such order shall constitute an execution."

"2012. No conveyance shall be returned to any claimant, either as owner or lien holder, nor shall any claim be established when such claimant:

"1. Fails to establish a legal and bona-fide claim; or

"2. Knew or had reason to suspect that said conveyance was being employed in the illegal transportation of intoxicating liquors; or

"3. Fails to overcome the presumption, if established, that such conveyance was being so used, with his knowledge and consent * * *."

While that law was in force, the following events took place: An automobile company at Glidden, in Carroll County, Iowa, known as the Franzwa Garage, on February 19, 1929, sold to one Al Gibbons the four-door sedan Buick automobile

in question. This car was accordingly registered in the name of the purchaser. Gibbons, as buyer, took possession of the car and drove it. Thereafter, on March 28th, Gibbons conveyed intoxicating liquors in that automobile over the public highways of Iowa. Such liquors were found in the conveyance. Whereupon, Gibbons was arrested, and the vehicle was seized. Then, in order to forfeit the automobile, the present proceedings were commenced by the appellant State, under the aforesaid statutes. Intervention was made in that action by the claimant-appellee, General Motors Acceptance Corporation, for the purpose of obtaining the vehicle under a conditional bill of sale. Apparently this conditional contract was originally executed by the Franzwa Garage and the said Al Gibbons at the time of the purchase above mentioned. Under the conditional agreement, the title to the property remained in the garage until all the purchase price for the automobile was paid by the purchaser.

Subsequently, and before the seizure, the conditional sales contract was assigned by the Franzwa Garage to the claimant, General Motors Acceptance Corporation, who paid a valuable  consideration therefor. Hence, under the assignment, the deferred payments were to be made by the purchaser, Gibbons, to the assignee, General Motors Acceptance Corporation. According to the record, the conditional sales contract was recorded. There was due the intervener under the sales agreement $922. Evidence was introduced to show that the General Motors Acceptance Corporation had no knowledge of the vehicle's illegal use when it was seized. Likewise, evidence was offered to prove that the claimant had no reason to suspect "that said conveyance was being employed in the illegal transportation of intoxicating liquors." On the whole record, the district court found the facts to be in favor of the intervener, and accordingly entered judgment, releasing the vehicle to it.

Appellant's complaints will now be considered. For the purpose of convenience, the appellant will hereinafter be designated as the "State," and the intervener, the "claimant."

I. In the first place, the State maintains intoxicating liquors were found in the conveyance and the claimant did not overcome the statutory presumption that the unlawful use of

 the vehicle was ''with the knowledge and consent'' of the latter. Such presumption is created by Subdivision 4 of Section 2010, supra. If the claimant produced substantial evidence tending to overcome the presumption, then a fact question arose, and in such event it was for the trial court to determine the weight and preponderance of said evidence. That finding of the district court, if supported by substantial evidence, has the effect of a jury's verdict, and cannot be interfered with on appeal. Concerning this proposition, we said, in *State v. One Certain Ford Coupé Automobile,* 205 Iowa 597 (local citation 601):

''By statute, Code Section 2010, Par. 5, the trial of an action of this character 'shall be by the court.' The action is not triable in this court *de novo.* It is a special proceeding. Code Section 10939. Although our conclusion on the evidence may differ from that of the trial court, we do not reverse except in those rare cases where the evidence is so utterly wanting to support the conclusion of the trial court that it cannot be sustained. In the instant case, the evidence being in conflict, we are not disposed to interfere with the order of the trial court.''

Before us, then, is the duty of determining whether there was substantial evidence in behalf of the claimant to show that the illegal use of the vehicle was without its knowledge and consent.

A witness for the claimant was J. H. Chivers, its special collection manager at Des Moines. Chivers said, without objection, that the claimant had no knowledge that Al Gibbons, the purchaser, was engaged in bootlegging or the illegal transportation of intoxicating liquors at the time the conditional sales contract was assigned. Notwithstanding the foregoing, the State further argues that the situation existing at the time the assignment was made to the claimant is immaterial, and does not overcome the presumption arising from the subsequent seizure, under the circumstances. Within the purview of the statute, it is the finding of liquor in the conveyance when the latter was seized that brings forth the presumption. *State v. One Certain Ford Coupé Automobile* (205 Iowa 597), supra; *State v. A Certain Automobile,* 208 Iowa 794. Testimony was

offered upon this subject by the claimant, covering the period of time from the original purchase date down to the actual seizure. Controversy arises, however, concerning the sufficiency thereof. Upon the part of the State, it is contended that such evidence does not meet the test. Primarily, this inadequacy of proof is urged by the State because the witness who testified for the claimant is not shown to have been the only officer or agent in the corporation who might or could have had the statutory knowledge. Claimant, being a corporation, necessarily must receive notice through its officers and agents. See *Russell v. Cedar Rapids Ins. Co.*, 78 Iowa 216; *Bennett State Bank v. Schloesser*, 101 Iowa 571; *Bobzin v. Gould Balance Valve Co.*, 140 Iowa 744; *Commercial Sav. Bank v. Brooklyn Lbr. & Grain Co.*, 178 Iowa 1206; *Watt v. German Sav. Bank*, 183 Iowa 346.

Several officers in Iowa represented the claimant in various capacities. There were an assistant secretary and general manager, a treasurer, purchasing agents, and the witness Chivers, who, as before stated, was the special collection manager. These purchasing agents were credit men in charge of districts. No one testified except Chivers, and it is argued that, because the general manager did not deny that the corporation had notice, the statutory presumption is not overcome, as a matter of law. Sometimes, because of the existing circumstances, all officers of the corporation must testify concerning the absence of notice. Whether that is true depends upon the facts surrounding the particular event. We have had occasion to discuss the law relating to notice and defect of commercial paper. While so doing, we stated, in *First Nat. Bank v. Dutton*, 199 Iowa 468 (local citation 473):

"We deem the correct rule to be that, where the bank, being a corporation, attempts to establish itself as an innocent purchaser, it must negative notice, first, by the officer or employee who had the transaction in charge of purchasing the paper, and second, by any other officer of the bank who had to do with said transaction, or who had knowledge that such a transaction was under consideration or contemplation; and if notice be squarely negatived by these parties, if their testimony is uncontradicted, and if the circumstances shown in the case do not tend to impeach their testimony, then the court

will be warranted in holding, as a matter of law, so far as this question is concerned, that the bank was an innocent purchaser.''

See, also, *Williamson v. Craig*, 204 Iowa 555.

Less evidence, however, would raise a jury question concerning the absence of such notice, as shown by our discussions on other occasions while considering notice of defect in commercial paper. Illustration of this thought may be found in *Bennett State Bank v. Schloesser* (101 Iowa 571), supra (local citation 573-4), where we said:

''It appears that plaintiff's cashier testified that he made the deal with Wroughten & Co., in which the bank took these notes in suit; that neither he nor the other officers of the bank had any notice of the matters pleaded by the defendant in defense to said notes. No objection was interposed to this evidence whereby the cashier undertook to testify to want of notice on the part of all the other officers of the bank. Nevertheless, as to them, his testimony was not conclusive, and was, at best, as to matters as to which he could have had no actual knowledge. Under such circumstances, we have held that the question of notice and good faith in making the purchase of notes by a partnership or bank is one for the jury.''

Again, while reviewing the same subject, we said, in *Des Moines Sav. Bank v. Arthur*, 163 Iowa 205 (local citation 216):

''Only the president of the bank testified to the absence of notice that the note had been paid, and it is argued that, as the other officers might have been aware of this, purchase without notice was not proven. But, according to the witness, the transaction was with him, and, though his evidence may not have established the absence of notice conclusively, it was sufficient to justify the finding that the bank was without notice in acquiring the paper.''

Through analogy, the principle controlling notice of banks, when buying commercial paper, may be applied here.

Returning now to the facts in the case at bar, it appears that the witness Chivers, the special collection manager, testified, without objection: First, that the corporation had no knowledge of the vehicle's use for bootlegging or illegal transportation of liquor at the time the conditional sales contract

was obtained through the assignment; and, second, that the corporation received no knowledge of such illegal business after the time the contract was purchased, until subsequent to Gibbons's arrest (when the car was seized). Objection is made by the State at this point on the theory that the witness Chivers did not say the corporation had no such knowledge, but rather, that he himself did not. Careful consideration has been given to this subject, and it appears to us very clear that the witness referred to the corporation. Especially is this true when the questions are considered with the witness's answers. The question was: "Did you receive any knowledge of the fact that Mr. Gibbons was engaged in such business after the time you purchased the contract and prior to his arrest?" Manifestly, the witness had purchased no contract, and it is not maintained by the State' that he had. Consequently, in view of the previous question and answer, which definitely and specifically related to the corporation, there could be no doubt that the interrogatory and answer under consideration had reference to the corporation's knowledge. Those questions were asked and answers thereto given without objections on the part of the State. As previously indicated, this witness, Chivers, had the duty of making collections after the conditional sales contract was purchased by the corporation. For that purpose, the files relating thereto were turned over to the witness's department. From that time on, this witness had charge of the files, the contract, and the collection. Hence, if notice concerning the subject-matter came to the institution, it would, in the regular course of procedure, go to the witness's department. Because the witness testified not only that he himself had no knowledge, but also regarding absence of knowledge on the corporation's part, a different situation arises than would be presented if the general conclusion concerning the corporation had not been given. It is true that the witness Chivers said he could not speak for the general manager. Just what was meant thereby is not clear in the record. Apparently, however, the witness was referring to the situation at the time the conditional sales contract was purchased, rather than a later date.

State agents testified that the reputation of the car owner, Gibbons, in the community in which he lived was bad, for he was there known as a "bootlegger" and "high jacker." A

"high jacker," under the record, is one who holds up, and steals booze from, the vehicles of others. To overcome the evidence of the State and corroborate the claimant is the fact that, before the conditional sales assignment was taken, the latter sent out written inquiries regarding Gibbons's character and financial ability. Every answer to such inquiries indicated the purchaser, Gibbons, to be a man of good standing in the community. Moreover, Franzwa, of the previously mentioned Franzwa Garage, stated that he too investigated Gibbons and his credit standing, and found him to be reliable. This purchaser, Gibbons, and his father operated a farm three or four miles from Glidden. Previous to buying the Buick, young Gibbons had purchased a Chevrolet from the Franzwa Garage. Nothing irregular appeared concerning the young man.

These conflicting statements and circumstances, however, were all properly before the district court, and that tribunal found in favor of the claimant. Considering the whole record, then, there is substantial evidence which indicates that, when the conditional bill of sale for the vehicle was assigned, and at all times thereafter until the seizure, the claimant did not know of Gibbons's illegal liquor transactions. With that record before it, the district court was empowered to find the weight and preponderance of the evidence, and, under the circumstances, we cannot interfere with the result.

II. In the second place, it is contended by the State that the record shows no proof of the intervener's right as a claimant under the statute.

Within the record it is disclosed, as before related, that the sales contract was in existence, duly recorded, and assigned to the claimant. Much of the purchase price was still unpaid.  This contract was in the possession of the claimant corporation. Testimony concerning the assignment thereof, as well as the consideration for the same, was given by Franzwa. When, in addition thereto, the district court then, as above related, found that the corporation had no notice that Gibbons illegally transported intoxicating liquors in the vehicle, the claimant was entitled to some relief.

III. Complaint is made by the State because the district court, over its objections, permitted the witness Chivers to tes-

tify, concerning the corporation's purchase of the conditional sales contract.

After the objection, however, a dialogue took place between the respective attorneys for the State and the claimant, during which certain concessions were made by the State. Then the assignment, together with the sales contract, was admitted in evidence, without objection. Later, as before stated, Franzwa testified concerning the sales contract and the assignment thereof. Even, then, assuming, without deciding, that the statements of Chivers in this matter under the circumstances were not admissible, the State suffered no prejudice in any way because thereof.

IV. Again, the State excepts because the trial court admitted into the record Exhibits 4 and 5, which were letters answering the claimant's inquiries about Gibbons.

As before explained, the claimant received these answers to its inquiries through the mails. They were placed in the proper files, and from there were brought to the trial by the  witness Chivers, who identified them. Following the identification, according to the original transcript, these were admitted into evidence without objection from the State. Basis for complaint, therefore, does not appear in the record.

V. Finally, it is urged by the State that the trial court erred in releasing the automobile to the claimant. To put the thought in another way, the State maintains that it was the  trial court's duty to forfeit the vehicle, sell it, and pay the claimant only such amount from the proceeds thereof as, under the record, appeared necessary for the satisfaction of its claim. Foundation for this contention is predicated upon Chapter 60 of the Acts of the Forty-third General Assembly. That legislation is an amendment to Sections 2012 and 2013 of the 1927 Code. It went into effect April 10, 1929, and the automobile in question had been previously seized, on March 28th of that year. Consequently, the law was not in effect when the vehicle in question was taken into custody. Decision of the controversy, then, must be made under the law before the amendment.

The purpose of the proceeding under the statute is to forfeit the vehicle conveying the intoxicating liquors. Intervention by the claimant is to avoid the forfeiture. When there is a judgment of forfeiture, there shall be a sale, and the proceeds must be distributed according to the rights of the claimants; and if they are not entitled to any or all of it, the whole or the remainder, as the case may be, shall go to the county school fund; but if there is no judgment of forfeiture, there will be no sale. This is indicated by a study of Chapter 97, 1927 Code, which includes the sections previously quoted. Section 2012 thereof provides that ''no conveyance shall be returned to any claimant, either as owner or lien holder,'' unless certain facts are proven. Clearly it is indicated thereby that, if those facts do appear in the record, the return may be made to such owner or lien holder. Here, as before stated, those facts appeared to the satisfaction of the district court, and consequently it was proper for that tribunal to order the vehicle returned to the intervener if the entire value thereof would no more than satisfy the claim. Gibbons, it will be recalled, had driven this Buick car approximately 37 days. At the time he purchased it, the vehicle was not new, for it had been used to some extent by the Franzwa Garage. Furthermore, the judgment was not entered until September 4, 1929. Wherefore, the current season for automobile driving was more than half gone. A new Buick automobile of this type and style at that time was sold in the locality for $1,530. Considering, as we must, the use to which the car had been put, and all the other circumstances disclosed by the record, we cannot say that, at a forced sale, under this statute, the vehicle would bring more than enough to satisfy the claim of $922, plus interest. As before indicated, the claimant was entitled to the automobile. Therefore, the burden was on the State to show that the value exceeded the claim. It furnished no evidence in this regard.

Therefore, the judgment of the district court should be, and hereby is,—*Affirmed.*

MORLING, C. J., and EVANS, ALBERT, and GRIMM, JJ., concur.

STEVENS, J., specially concurs.

FAVILLE, J., took no part.

STEVENS, J. (concurring). I concur in the result reached in this case. I do so upon the ground that the testimony of the witness Chivers, which was received without objection, that none of the officers of the corporation knew that the automobile was being used for the unlawful purpose of transporting intoxicating liquors, must be considered. This presented an issue of fact for the court. I am, however, of the opinion that the doctrine of the negotiable instrument cases cited has no application to this case, and that the mere denial of the officer having charge of the collection of conditional sales accounts would not be sufficient to overcome the statutory presumption that the claimant had notice of the unlawful use of the automobile, or that such mere denial would present an issue of fact, to be decided by the court.