STATE OF IOWA, Appellee, v. A CHRYSLER SEDAN; MANBECK MOTOR SALES COMPANY, Intervener, Appellant.

No. 40226.

JUNE 23, 1930.

*R. J. Smith* and *Lehmann, Hurlburt & Hossfeld*, for appellant.

*John Fletcher*, Attorney-general, *Neill Garrett*, Assistant Attorney-general, and *J. E. Talbott*, for appellee.

GRIMM, J.—On May 3, 1929, late at night, the Chrysler Sedan involved in this case was seized by the sheriff and certain state agents on the paved highway in Poweshiek County, Iowa, a short distance east of the city of Grinnell. At the time of the seizure, the car contained 121 gallons of alcohol. The car was going west.

The Manbeck Motor Sales Company is an Iowa corporation, with its principal place of business at Des Moines. It appears that, on February 11, 1929, it sold this particular Chrysler automobile to one John Sergo, of Des Moines, under a conditional sales contract. At the time of the seizure, there was still due on said contract the sum of $839.51. Under the terms of the contract, the title to the automobile remained in the intervener until it was paid for in full. The conditional sales contract was duly recorded in Polk County.

At the time the car was seized, it was being driven by John De Marco. There is nothing in the record tending to show that Sergo had sold his interest in the car to De Marco, nor is there any showing in the record by what authority, so far as Sergo is concerned, if any, De Marco had possession of the car.

The only witness produced on behalf of the intervener was

Earl N. Manbeck, who testified that he had lived in Des Moines for 42 years. He is president of the Manbeck Motor Sales Company, intervener, which office he has held for 14 years, ever since its organization. The company sells automobiles, both at wholesale and retail, having a territory of 35 counties in the state for wholesale purposes, and retailing in Polk County. Manbeck testified in reference to the custom and manner under which the company did business at the time this particular automobile was sold. It appears that the company called on a credit association in Des Moines in reference to the financial responsibility of purchasers, and also required the prospective purchasers to furnish references. In this particular case, there were three references given. However, it appears that, according to Manbeck, there was, at the time, only one man in Des Moines who had any information which he could intelligently give as to the financial standing of the members of the Italian colony. Manbeck testified that the reports on Sergo were to the effect that he was a man of good character, and that he was entitled to credit. Manbeck also testified as follows:

''We also have in our organization a man who gives his entire time to checking up on such matters and making collections. He is what we call our 'contact' man. He is out on the outside, and is supposed to get all the information that he can at all times in regard to purchasers of our cars.''

The man so employed at the time of this transaction was one Wheaton. Apparently it was his business to check up on the purchasers of the cars after the cars were sold, but it was the duty of the clerks in the office to check up prior to the sale. Further, Manbeck testified:

''We did not have information that this car was to be used for any unlawful purpose at the time it was sold, or any time up to the time it was seized.''

Manbeck further testified:

''I have never met John De Marco, to my knowledge. I never authorized his use of this car. I never knew of such a gentleman. I had no information at any time that the car in question was being used for any unlawful purposes by anyone.''

It appears that Manbeck did what is called the "paper work" in connection with the sale of this particular car.

The investigations that were made in reference to Sergo developed that he operated a pool hall or cigar store in what is known as the "colony district" in Des Moines. Manbeck testified that he could not recall whether another man in the service of the company, named Montgomery, had been down to make an investigation in reference to Sergo and this particular car. Montgomery was one of a force of 20 salesmen then in the service of the company. The witness Manbeck also testified as follows:

"My brother is the only one besides myself who takes an active part in the business. He is vice president."

The evidence tends to show that one Jordan was the man of the sales force who actually sold this car to Sergo. The State, on rebuttal, showed, by evidence introduced without objection, that one of the state agents had a conversation with Montgomery, in which he (Montgomery) stated that he sold this particular car to Sergo. Another state agent testified as follows:

"I talked to two ladies and two men working in the office at desks, at the company's place of business [Manbeck Motor Sales Company]. They told me that two payments had been made upon this automobile under this conditional sales contract. The young lady in the office went through the records and produced some papers and gave me this information. She stated these payments had been made by John De Marco."

State agents further testified, without objection, that Sergo had a reputation for being a hauler and transporter of intoxicating liquors.

The court found, among other things, as follows:

"The evidence shows that the managing officers of the corporation are the president, who testified, and the vice president, who takes an active part in the management and control of the business, who did not testify. The testimony of the president is that he had no knowledge. The fact that the vice president, the other managing officer, did not testify, may or may not be significant; but the court is of the opinion, under the circumstances in this case, the claimant has not met the burden placed upon

him by the statute, for that it might well happen that the vice president, and the most active of the managing officers of the corporation, had the very knowledge which the statute makes a bar; and his failure to testify leaves a defect, this court thinks, in the evidence, so that the court cannot say that the corporation or claimant did not have knowledge of the use to which the car was being put, at the time of the seizure and prior thereto.''

I. This proceeding is under Section 2010 of the Code of 1927. Subsection 4 thereof is as follows:

*"Presumption.* If it be made to appear that any intoxicating liquors were found in or on said conveyance when it was seized, it shall be presumed that the conveyance was, when seized, employed with the knowledge and consent of all claimants, in the unlawful transportation of such liquors.''

Section 2012 provides:

''No conveyance shall be returned to any claimant, either as owner or lien holder, nor shall any claim be established when such claimant: * * *

''3. Fails to overcome the presumption, if established, that such conveyance was being so used, with his knowledge and consent.''

Has the company, by producing as a witness the president and manager of the company only, by his testimony, as given on the trial, successfully met the burden of overcoming the statutory presumption?

It will be recalled that two of the claimant's sales force claimed to have sold this particular car,—Jordan and Montgomery. Neither of the men was produced. What knowledge or information they received at the time of the sale or thereafter is not disclosed.

It clearly appears that the brother of the president, Manbeck, was active in the business. He has not appeared as a witness, to testify that he had no information in reference to the circumstances under which the car was purchased, or the use which was being made of the car. The young lady in the office, who testified to the fact that the only two payments which had been made on the car were made by John De Marco, who had

possession of the car at the time it was seized, has not been produced as a witness to testify to what she learned, if anything, in reference to De Marco's interest in the car, or what he was doing with the car. The man Wheaton, whose special duty it was to gather information in reference to the purchasers of cars, and who, according to Manbeck, "gives his entire time to checking up on such matters and making collections," was not produced to testify as to what he knew, or that he did not know that the car was being used by De Marco in the illegal transportation of intoxicating liquors.

We think the court was warranted in its finding that the complainant had not overcome the statutory presumption. This case is not in any manner in conflict with *State v. One Certain Buick Sedan,* 209 Iowa 791, in which certain evidence was admitted without objection, which otherwise would not have been admitted. As was said in *State v. One Certain Ford Coupé,* 205 Iowa 597:

"Although our conclusion on the evidence may differ from that of the trial court, we do not reverse except in those rare cases where the evidence is so utterly wanting to support the conclusion of the trial court that it cannot be sustained."

In this case, we not only follow that rule, but we reach the conclusion that the trial court was right. It follows that the cause must be, and is,—*Affirmed.*

MORLING, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.