James BUTTS, Plaintiff,

v.

OCE–USA, INC., Defendant.

No. IP 97–1239–C–B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 5, 1998.

Bruce D. Brattain, Brattain & Minnix, Indianapolis, IN, for Plaintiff.

Steven I. Farbman, Patrick W. Ritchey, Reed Smith Shaw & McClay LLP, Pittsburgh, PA, Kenneth J. Yerkes, Barnes & Thornburg, Indianapolis, IN, for Defendant.

## ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARKER, Chief Judge.

This matter comes before the Court on Defendant's Motion for Summary Judgment on Plaintiff's breach of contract and tortious interference with prospective business advantage claims. For the following reasons, Defendant's Motion for Summary Judgment is *GRANTED*.

## I. BACKGROUND

Plaintiff James Butts ("Butts") began his employment with Defendant Oce–USA, Inc. ("Oce") in September, 1991, as a salesperson based in Indianapolis, Indiana. (Butts Depo. at 16.) As a salesperson, Butts was employed at-will and did not have an employment contract with Oce. (*Id.*) In July, 1994, he changed positions within the company and became a distributor sales manager. (*Id.* at 17.)

Approximately two months later, on September 24, 1994, Oce and Ikon Office Solutions ("Ikon") entered into a Purchase and Distribution Agreement. (James Boysen Aff. at ¶ 3.) Among other things, the parties agreed not to solicit or hire each other's employees. (*Id.*) The most recent Agreement provides:

SECTION 16. NON–SOLICITATION

Neither party shall, without the express consent of the other party, while this Agreement is in effect and for a period of one year after any termination of this Agreement, directly or indirectly solicit for employment or employ any person who is either a current employee, or who within the preceding six months was an employee of the other party or its permitted assigns. The party breaching this Section 16 shall be liable to the non-breaching party in the amount of 300% of the gross annual income ... of each involved employee, as liquidated damages.

(Exhibit A of Boysen Aff.) The Agreement between Ikon and Oce in effect at the time of Butts' employment contained the same provision although it was embodied in two documents. (Boysen Aff. at ¶¶ 4–7.)

In early 1996 Butts learned that his position with Oce was going to be eliminated company-wide. (*Id.* at 78.) In anticipation of the job cuts, he began looking for other employment both within and outside of Oce. (*Id.* at 79–86.) In the summer of 1996, while Butts was still employed at Oce, Ikon offered him a position in Dallas, Texas on the condition that Oce provide Ikon with the written permission necessary to hire one of its employees. (*Id.* at 91.) Oce refused to provide such permission, causing Ikon to withdraw its offer of employment to Butts. (*Id.* at 94, 109.)

Soon thereafter, in August, 1996, Oce offered Butts a position as its district sales manager for the Dallas/Fort Worth Region. (*Id.* at 19.) This offer was confirmed in a letter to Butts from Larry Kleuser, then the Region Director of Oce–Office Systems, dated August 6, 1998. (Defendant's Exhibit 2.) Butts immediately accepted Oce's offer and agreed to relocate to Dallas. (Butts Depo. at 24.) Thereafter, on October 28, 1996, Oce sent Butts a relocation budget for his move to Dallas and a copy of Oce's Employee Relocation Policy and Procedures Manual ("Relocation Manual"). (Butts Depo., Exhibits 5–7.)

Butts did not officially begin his new position until January 12, 1997. (Butts Depo. at 19–20.) However, during the Fall of 1996, Butts began assuming some of the duties of his new position by commuting to Dallas from his home in Indianapolis. (*Id.*) During that time, Butts incurred numerous relocation-related expenses, including house-hunting trips to Dallas for himself and his wife. (*Id.* at 44.) Because Butts did not move to Dallas, he also incurred work-related expenses connected with his commute between Indianapolis and Dallas. (*Id.* at 21.) All of these expenses were reimbursed by Oce. (*Id.*)

In January, 1997, Butts withdrew his children from school in Indianapolis and moved the family to a temporary apartment in Dallas. (*Id.* at 42–43.) Meanwhile, Butts was trying to negotiate payment by Oce of an additional $25,000 above the appraised value of his Indianapolis home. (*Id.* at 53–54.)

Butts sought this sum for additional improvements he allegedly made to his home in preparation to sale. (*Id.* at 56.) Oce, however, refused to compensate Butts for the alleged additional value of his home, pointing out that the Relocation Manual did not provide for such expenses. (*Id.* at 143.)

At the same time, Butts was close to exceeding the amount of relocation expenses budgeted by Oce and was concerned that Oce would not continue to reimburse his temporary housing in Dallas. (*Id.* at 142.) Accordingly, without Oce's permission, Butts and his family moved back to Indianapolis, where he continued to work out of his home. On February 26, 1997, Oce sent Butts a memorandum, which stated:

> Jim, you need to make a career decision to be the Manager in the Dallas/Ft. Worth office. Either, [sic] you return to the Dallas/Ft. Worth sales team by February 28th and complete the relocation, or failure to return to Dallas by that time means that you have officially tendered your resignation effective February 28, 1997.

(Defendant's Tab 2.) Butts did not return to Dallas.[1] On February 28, 1997, his voice mail was disconnected and he was sent letters indicating that he no longer was an Oce employee. (Butts Depo. at 148, 150.) In June 1997, Butts accepted a position with Danka Company. (*Id.* at 74.) He filed this lawsuit July 2, 1997.

## II. *SUMMARY JUDGMENT STANDARDS*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the non-moving party on the particular issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Methodist Med.*

---

1. Butts responded to the Oce memo with a March 3, 1997 memo setting forth additional demands to be met if he were to complete his move to Dallas. (Exhibit B to Defendant's Reply Brief.)

*Ctr. v. American Med. Sec., Inc.,* 38 F.3d 316, 319 (7th Cir.1994).

In resolving a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movants. *Patel v. Allstate Ins. Co.,* 105 F.3d 365, 366 (7th Cir.1997); *Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 392 (7th Cir. 1992). However, we must not "ignore facts in the record merely because they are unfavorable.... [A non-movant] gets the benefit of the doubt only if the record contains competent evidence on both sides of a factual question." *Patel,* 105 F.3d at 366. Thus, if genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

### III. *DISCUSSION*

Defendant moves for summary judgment on Plaintiff's breach of contract and tortious interference with prospective business advantage claims.

### A) *BREACH OF CONTRACT CLAIM*

Plaintiff claims that Defendant breached its employment contract with him by terminating him without good cause and failing to reimburse all of his moving expenses. Defendant moves for summary judgment on that claim, contending that (1) Butts could be terminated without cause because he was an at-will employee, and (2) even if he were not an at-will employee, Butts' failure to report to work provided just cause to terminate his employment. Plaintiff rejoins that (1) he had an employment contract with Oce for a definite term, and (2) Oce had no just cause to terminate his employment.

■■■ Indiana law recognizes two basic forms of employment: (1) employment for a definite or ascertainable term, and (2) employment at-will. *Orr v. Westminster Village North Inc.,* 689 N.E.2d 712, 717 (Ind. 1997).

If there is an employment contract for a definite term, and the employer has not reserved the right to terminate the employment before the conclusion of the con-

tract, the employer generally may not terminate the employment relationship before the end of the specified term except for cause or by mutual agreement. If there is no definite or ascertainable term of employment, then the employment is at-will, and is presumptively terminable at any time, with or without cause, by either party.

*Id.; see also Wior v. Anchor Industries, Inc.,* 669 N.E.2d 172, 175 (Ind.1996). In Indiana, there is a strong presumption that employment is at-will. *Id.*

■■■ Was Butts an at-will employee or an employee under contract for a definite term? Plaintiff maintains that the August 6, 1996 letter from Larry Fleuser, Region Director of Oce, to Butts constitutes Butts' employment contract for a definite term. That letter provides:

Dear Jim,

I am pleased to confirm our offer of employment as District Sales Manager of our Dallas/Ft. Worth office with Oce–Office Systems. We would anticipate your start date to be August 5, 1996.

**Details regarding our offer effective August 5, 1996 are as follows:**

* **Base Salary:** Paid at the rate per pay period of $2,576.92 (every two weeks or 26 per year) equals $67,000 per year.

* **Incentive Guarantee:** Paid at the rate per pay period of $923.07 (every two weeks or 26 per year). This incentive guarantee would be for a period from August 5, 1996 through December 31, 1996.

* Once you start your assignment in the Dallas/Ft. Worth branch, you will be guaranteed this incentive compensation for a period of six months at 100% i.e. October, 1996 to March 31, 1997. Any over-achievement will be paid per the DSM 1997 Compensation Plan.

* **Summary Financials:**

| | |
|---|---|
| **Annual Salary** | $67,000 |
| **Incentive Opportunity** | $24,000 |
| **Annual Compensation** | $91,000 |

I am sure you will make a great addition to the Oce–Office Systems team. If you have any questions, please do not hesitate to give me a call at: 312–714–4653.

Sincerely,
/s
Larry Kleuser
Region Director
Oce–Office Systems

/s
Signature of Acceptance
Jim Butts

Defendant's Exhibit 2.

 Indiana requires an employment contract to contain four elements in order to be valid and enforceable: 1) it must state the place of employment; 2) it must state the period of employment; 3) it must state the nature of the services the employee is to render; and 4) it must state the compensation the employee was to receive. *Majd Pour v. Basic American Medical, Inc.*, 512 N.E.2d 435, 439 (Ind.Ct.App.1987).

In this case, the only dispute regards the period of employment element. Defendant contends that "[the August 6, 1996] letter included neither a promise of employment for any specific duration nor any term which would alter Plaintiff's at-will employment status." (Defendant's Memorandum in Support of its Motion for Summary Judgment at 8.) Plaintiff counters that, although the period of his employment "is not stated precisely" in the August 6th letter, "a review of the [letter] strongly indicates that the period is for one year." (Plaintiff's Response to Defendant's Motion for Summary Judgment at 7.) In support of that interpretation, Plaintiff points out that "[b]oth the salary and the incentive are stated in two week periods with a notation of 26 per year. Also, the financial summary is stated in annual terms." (*Id.*)

Plaintiff's interpretation of the August 6th letter strains both logic and common sense. The fact that Butts' salary was stated in annual terms is of no consequence, since no salary can be stated without an applicable time period. Salaries are typically measured in annual terms and doing so does not eliminate an employee's at-will status. An examination of the letter reveals nothing which sets forth a period of employment, and we refuse Plaintiff's invitation to construct one. Indeed, even Plaintiff concedes that the letter does not explicitly state a period of employment. Under Indiana law, the presumption that Butts was an employee at-will is strong, and the August 6th letter no where near overcomes that presumption.[2] Butts therefore was an at-will employee and was subject to discharge without just cause. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's Breach of Employment Contract claim is *GRANTED*.

Plaintiff also contends that Defendant breached its obligation to pay his relocation expenses.[3] Defendant maintains that (1) it had no obligation to pay Butts' relocation expenses, and (2) it nevertheless paid all his relocation expenses.

 Oce offered to pay Butts' relocation expenses, consistent with the terms of the Relocation Manuel and the relocation budget.[4] Butts accepted that offer and began

2. Plaintiff notes that Oce required him to sign the letter, which Plaintiff argues is evidence that the letter was intended to be an employment contract. This argument fails to rectify the letter's glaring deficiency: the lack of a period of employment. Without a period of employment, the letter does not alter Butts' at-will status.

3. Admittedly, this is a generous interpretation of Plaintiff's position. In his Response Memorandum, Plaintiff claims that the relocation expenses were part of the alleged employment contract and that Defendant breached that contract by failing to provide Plaintiff with all of his relocation expenses. Since we have found that no employment contract existed, Plaintiff obviously is not entitled to his relocation expenses under such a contract. However, another possibility, which we will now explore, is whether Oce had an independent contractual obligation to pay Plaintiff's relocation expenses and, if so, whether Oce breached that contract.

4. Plaintiff also claims that Oce orally agreed to pay his relocation expenses. (Plaintiff's Response Memorandum at 8.) Plaintiff cites his deposition testimony at page 35, lines 15–21, which reads:

Q: Now, if you'd look at the complaint, and I'm directing your attention to paragraph 6, it says in there that subsequently, and I'm presuming that to be subsequently after the August 6th letter which is Deposition Exhibit 2, other oral agreements were made between you and Oce concerning employment conditions and compensation which modified the contract. Do you see that?

A: Yes.

Q: Okay. Would you describe for me what the oral agreements were that you're referring to there?

A: And are we talking after the contract of August 6th being signed?

Plaintiff's Depo. at 35, lines 12–25. This is all the testimony cited by Plaintiff and the following page of testimony, which presumably includes Plaintiff's answer to the last question, was not cited or provided by either Plaintiff or Defendant. By itself, the aforementioned testimony

the process of moving to Dallas. "The acts and actions involved in moving one's household to a new location ... are sufficient to constitute consideration for an agreement to provide moving allowances or expenses." *Wior v. Anchor Industries, Inc.,* 669 N.E.2d 172, 176 (Ind.1996) *quoting Ohio Table Pad Co. v. Hogan,* 424 N.E.2d 144, 146 (Ind.App. 1981). However, whether Butts' temporary move to Dallas is sufficient to constitute consideration is debatable. After all, Butts did not sell his Indianapolis home or take other permanent steps towards relocating; he simply moved into temporary housing. Indeed, he and his family relocated only for a short time and were reimbursed for all the expenses related to that temporary relocation.

■ Indulging this theory, we assume *arguendo* that all the elements of a contract—offer, acceptance and consideration—existed and Oce therefore was obligated to pay Butts' relocation expenses, consistent with the Relocation Manuel and relocation budget. Plaintiff contends that Oce breached its obligation by (1) not informing him whether it would continue to pay for his temporary housing in Dallas and (2) failing to reimburse him for improvements that were made to his house to prepare it for sale. (Plaintiff's Response Memorandum at 9.) Defendant responds that "Oce reimbursed [Butts] for every relocation-related expense for which he submitted a request." (Defendant's Reply Memorandum at 6–7.)

Even assuming that a contract for relocation expenses existed, an examination of the record reveals that Oce paid Butts all of the relocation expenses that he was entitled to under such an agreement. First, Plaintiff's claim that he was uncertain whether Oce would pay for his temporary housing in Dallas does not allege a breach of contract. Oce satisfied its obligations and Plaintiff presents no evidence that Oce would have failed to pay for his temporary housing expenses had he stayed in Dallas. Second, the Relocation Manuel does not obligate Oce to reimburse Butts for improvements he made to his Indianapolis home to prepare it for sale and Butts conceded as much in his deposition.

does not obligate Defendant to provide relocation expenses beyond those expenses provided for in the relocation Manuel.

*See* Plaintiff Depo. at 137 (Exhibit A to Plaintiff's Reply Memorandum); Relocation Manuel at 4 (Exhibit 2 to Plaintiff's Memorandum in Support of Motion for Summary Judgment.) [5] Therefore, Defendant's Motion for Summary Judgment on Plaintiff's Breach of Relocation Expenses Contract Claim is *GRANTED.*

**B) *TORTIOUS INTERFERENCE WITH PROSPECTIVE · ECONOMIC ADVANTAGE CLAIM***

Defendant also moves for summary judgment on Plaintiff's claim for tortious interference with prospective economic advantage, in which Plaintiff alleges that Oce interfered with his potential employment at Ikon.

■ Under Indiana law, the elements of a cause of action for tortious interference with a prospective economic advantage include: (1) the existence of a business relationship, (2) the defendant's knowledge of the existence of the relationship, (3) the defendant's intentional interference in the relationship, (4) the absence of any justification, and (5) damages resulting from the defendant's interference. *See Wright v. Associated Ins. Cos. Inc.,* 29 F.3d 1244, 1252 (7th Cir.1994); *Furno v. Citizens Ins. Co. of America,* 590 N.E.2d 1137, 1140 (Ind.Ct.App.1992). In addition, "it is critical that the defendant acted illegally in achieving his end." *Economation, Inc. v. Automated Conveyor Systems, Inc.,* 694 F.Supp. 553, 556–57 (S.D.Ind.1988) (citations omitted); *see also Wright, supra.; GL Industries of Michigan, Inc. v. Forstmann–Little,* 800 F.Supp. 695, 699 (S.D.Ind.1991)(Barker, J.); *Watson Rural Water Co., Inc. v. Indiana Cities Water Corp.,* 540 N.E.2d 131, 139 (Ind.Ct.App.1989).

The only dispute here regards the illegality requirement. Defendant contends that its interference with Butts' potential employment with Ikon was not illegal. Plaintiff rejoins that Defendant's conduct violated two Indiana statutes and one Texas statute.

5. The relocation manual specifically excludes reimbursement for "[c]leaning, maintenance, [and] fix-up costs" related to the "Sale of Residence." Relocation Manual at 4.

Plaintiff first claims that Oce violated the Indiana blacklisting statute, IND. CODE § 22–5–3–1(a), which reads, in pertinent part:

A person who, after having discharged any employee from his service, prevents the discharged employee from obtaining employment with any other person commits a Class C infraction....

Plaintiff also asserts that Oce violated the similar Texas blacklisting statute, TEX. LAB. CODE ANN. § 52.031(b), which reads, in pertinent part:

A person commits an offense if the person: (2) conspires or contrives by correspondence or any other manner to prevent an employee discharged by a corporation, company, or individual from procuring employment.

Defendant in response argues that it did not violate either statute because Butts had not been discharged at the time of Oce's alleged interference. Although Plaintiff concedes that both statutes require that "the employee had been discharged or left his employment," he maintains that the statutes nevertheless apply because Butts was told that his position was going to be eliminated, "which is tantamount to discharge." (Plaintiff's Response Memorandum at 13.)

It is undisputed that Defendant's alleged interference occurred in the summer of 1996. At that time, Butts remained employed by Oce and had not been discharged, even though he believed that discharge was imminent. Indeed, there is no evidence that Butts was ever discharged from Oce. Although his former position with Oce was eliminated in August 1996, he immediately was given a position in Oce's Dallas office. Therefore, based upon a plain reading of the statutes, Oce's alleged interference falls outside the scope of both statutes.

Plaintiff, however, maintains that we should read the statute broadly and include "departing employees" within its scope. In support, Plaintiff cites Judge Hamilton's decision in *Bridgestone/Firestone, Inc. v. Lockhart*, No. IP 96–1838–C–H/G, 1997 WL 763479 (Nov. 17, 1997 S.D.Ind..), in which the phrase "departing employee" is used to describe a plaintiff under the Indiana's civil blacklisting statute.[6] *Id.* at *20.[7] Plaintiff reads too much into Judge Hamilton's use of that phrase. It clearly was not intended to expand the scope of the statute. It was used only once and in a sentence describing why the threat of a lawsuit constitutes an "attempt ... to prevent such discharged employee ... from obtaining employment...." *Id.*

Moreover, the plain language of both the Texas and Indiana blacklisting statutes provide that the employee's discharge is a prerequisite to a violation of the statute. Since the statutory language is unambiguous, we will not look beyond the words in interpreting either statute. *See United States v. Locke*, 471 U.S. 84, 95, 105 S.Ct. 1785, 1792, 85 L.Ed.2d 64 (1985); *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir.1987).

This approach is consistent with the Indiana Supreme Court's decision in *Wabash R. Co. v. Young*, 162 Ind. 102, 69 N.E. 1003 (1904), which addressed the scope of Indiana's civil blacklisting statute. In that case, Plaintiff had left his employment voluntarily and thereafter was blacklisted by his former employer. *Id.* 69 N.E. at 1004. Plaintiff then sued his former employer under the civil blacklisting statute. *Id.* The Indiana Supreme Court dismissed the action, holding that "the subject of the protection of discharged employees does not include the protection of employes who have not been discharged, or who voluntarily quit the service of their employer." *Id.* The court further held that "provisions for the protection of employees who had not been discharged could not be included without a violation of

---

6. As correctly pointed out by Plaintiff, Indiana's civil and criminal blackmail statutes are nearly identical. (Plaintiff's Memorandum in Support of Submission of Supplemental Authority at 2.) The only notably difference is that, under the criminal statute, one must prove that the employee was actually prevented from obtaining employment. *Compare* Ind.Code § 22–5–3–2 (civil) *with* Ind.Code § 22–5–3–1 (criminal).

7. This opinion was superseded by *Bridgestone/Firestone, Inc. v. Lockhart*, 5 F.Supp.2d 667 (S.D.Ind.1998). However, the term "departing employee" remains in the amended opinion. *Id.* at 688.

section 19, art. 4, of the [Indiana] Constitution," which requires the scope of the act to be expressed in the title.[8]

Therefore, consistent with *Young* and the plain reading of the statutes, Oce did not violate the Indiana or Texas blacklisting statute, since Butts had not been discharged at the time of Oce's alleged interference.

 Plaintiff further contends that Oce's interference violated Indiana's criminal intimidation statute, IND.CODE § 35–45–2–1(a),(c)(7), which states, in pertinent part:

A person who communicates a threat to another person, with the intent that the other person engage in conduct against his will ... commits intimidation, a Class A misdemeanor. (c) "Threat" means an expression, by words or action, of an intention to (7) falsely harm the credit or business reputation of the person threatened.

"The elements of the offense are: 1) communicating a threat, 2) to another person, 3) with the intent that the other person engage in conduct against his will." *Bolen v. State,* 430 N.E.2d 398, 400 (Ind.App.1982).

Plaintiff contends that Oce coerced Ikon into not hiring Butts by refusing to waive the nonsolicitation clause in the parties' agreement. Defendant rejoins that "the statute only contemplates a threat with the intent to harm the reputation of the person threatened, ... [yet] Plaintiff makes no claim that Oce threatened Ikon with the intention of harming Ikon's business reputation." (Defendant's Memorandum in Support of Motion at 11–12.)

Without addressing any standing issues that might arise in terms of Butts' making this claim on behalf of Ikon, it is clear that Defendant's alleged interference did not violate Indiana's criminal intimidation statute. First, Oce did not "threaten" Ikon within the meaning of the statute; it simply asserted its contractual right not to waive the nonsolicitation clause. Indeed, that right arose from an agreement freely entered into by both Ikon and Oce. To criminalize Oce's actions would

be to criminalize everyday business negotiations. Such a result would be inconsistent with the statute's purpose, not to mention reason and common sense.[9]

Moreover, to establish a violation of the statute, Plaintiff must demonstrate that Oce intended to harm Ikon (the party allegedly threatened). Plaintiff has failed to allege such an intent. Instead, Plaintiff obviously, but erroneously, bases his allegations on Oce's intent to harm Butts. Because Oce's actions did not constitute a "threat" and Plaintiff does not allege that Oce threatened to harm Ikon, Oce did not violate Indiana's criminal intimidation statute.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's tortious interference claim is *GRANTED,* since Defendant's alleged interference was not illegal.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgement on Plaintiff's breach of contract claim is *GRANTED* because (1) Plaintiff was an at-will employee, and (2) Defendant satisfied its obligations regarding Plaintiff's relocation expenses. Defendant's Motion for Summary Judgment on Plaintiff's tortious interference with prospective business advantage claim is also *GRANTED* because Defendant's alleged interference with not illegal.

---

**8.** The title of the statute read: "An act for the protection of discharged employes and to prevent blacklisting." *Wabash,* 69 N.E. at 1004.

**9.** *See State v. Hammond,* 80 Ind. 80 (1881)(a threat to accuse another of a crime, if made for the purpose of inducing payment of just debt, was not within former statute [now Ind.Code 35–45–2–1] against blackmailing).