**Diane L. BOCHENEK, Plaintiff,**

v.

**WALGREEN CO., Defendant.**

**No. 2:97–CV–190–RL.**

United States District Court,
N.D. Indiana,
Hammond Division.

Sept. 11, 1998.

Diana C. Gonzalez, David W. Weigle & Associates, Hammond, IN, for Plaintiff.

Thomas J. Brunner, Jr., Kevin D. O'Rear, Baker and Daniels, South Bend, IN, for Defendant.

## *ORDER*

LOZANO, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on June 22, 1998. For the reasons set forth below, the motion is **GRANTED.** The Clerk is **ORDERED** to dismiss this case with prejudice.

*BACKGROUND*

Diane Bochenek ("Bochenek") was employed in various capacities at several Walgreen Company ("Walgreens") locations in Hammond, Indiana, since 1984. At the time of her termination she was an assistant manager. She had never been disciplined by Walgreens for any inappropriate conduct before the incident in question.

In June 1996, Walgreens terminated Bochenek because she set prices for and pur-

chased some items from a "flush box" at Walgreens. "Flush box" items are damaged items, or items not stocked by the store. Walgreens states that employees purchasing flush box items were not allowed to set the prices on their own. The items purchased by Bochenek were not marked with a price. Bochenek set the price for the flush box items herself and presented them to the cashier. The cashier told Bochenek that loss prevention specialist, Ted Mayes ("Mayes"), and assistant manager, Mike Jankovic ("Jankovic"), stated that employees were not allowed to purchase flush box items anymore. Bochenek replied that she was not aware of any such rule, and asked to be rung up.

According to Bochenek, she purchased the flush box items pursuant to company policy, and the purchase was allegedly "okayed" by Jankovic, who signed the receipt. At that time, Bochenek asked Jankovic to advise her if the purchase was not proper, and if so, she would negate the purchase. Bochenek claims that she did not violate a known policy, and that flush boxes had not been discussed at loss prevention seminars. Further, she insists that other Walgreens employees purchased flush box items and were not discharged.

A few days after this incident, first Mayes and then manager, Mike Ingram ("Ingram"), met with Bochenek to discuss the incident. She admitted to purchasing the flush box items and acknowledged that no one had given her authority to change the flush box items' prices. Mayes informed her that the price of the items totaled $118.53, which Bochenek agreed to pay. District manager, Howard Alts ("Alts"), decided to fire Bochenek after meeting with Mayes and Ingram.

In May 1997, Bochenek filed a complaint in this Court alleging violations of the Americans With Disabilities Act ("ADA"), breach of contract, and defamation by Walgreens. Bochenek claims that her medical condition and obesity are the true reasons for her termination. Moreover, she claims that she was denied promotions and raises because of Walgreens' discrimination. During her employ with Walgreens, Bochenek took medical leave for knee replacement surgeries, allegedly resulting from her chronic arthritic condition and her obesity. After her knee surgeries, Bochenek's physician released her to return to work without restrictions.

Bochenek states that other Walgreens employees, including Joanne Kraft, made several negative comments about her weight and size. Bochenek notes that Joanne Kraft's husband, Keith Kraft, took over the management of the Walgreens store the same week Bochenek was fired.

Walgreens filed the instant motion for summary judgment.

*DISCUSSION*

The standards generally governing summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, a court must read all facts in the light most favorable to the nonmovant. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *NUCOR Corp. v. Aceros Y Maquilas de Occidente,* 28 F.3d 572, 583 (7th Cir.1994).

The burden is on the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, which it believes demonstrate an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party has met this burden, the nonmoving party may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990); *Schroeder v. Lufthansa German Airlines,*

875 F.2d 613, 620 (7th Cir.1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir.1988) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir. 1988); *see also Hickey v. A.E. Staley Mfg.,* 995 F.2d 1385, 1391 (7th Cir.1993). Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U .S. at 323, 106 S.Ct. 2548.

*Americans With Disabilities Act Claims*

Counts I and II of Bochenek's complaint allege violations of the ADA. The ADA states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112. In ADA disparate treatment claims such as this one, the *McDonnell Douglas* burden-shifting framework commonly employed in Title VII and ADEA actions is generally appropriate. *Weigel v. Target Stores,* 122 F.3d 461, 464 (7th Cir.1997); *see DeLuca v. Winer Indus.,* 53 F.3d 793 (7th Cir.1995).

■ The plaintiff has the burden of establishing a prima facie case of discrimination. She must show "(1) that she is disabled within the meaning of the ADA, (2) that her work performance met her employer's legitimate expectations, (3) that she was discharged, and (4) that the circumstances surrounding her[ ] discharge indicate that it is more likely than not that her disability was the reason for these adverse actions." *Leffel*

*v. Valley Financial Services,* 113 F.3d 787, 794 (7th Cir.1997). Because the ADA's proscription against employment discrimination protects only "qualified individual[s] with a disability," the plaintiff must also show that she is a member of the protected class. *Weigel,* 122 F.3d at 465; *see DeLuca,* 53 F.3d at 797 (including membership in a protected class as an element of prima facie showing); *Rothman v. Emory Univ.,* 123 F.3d 446, 451 (7th Cir.1997) (same).

■ First, Walgreens argues that Bochenek is not disabled for purposes of the ADA. The ADA defines disability as "(A) physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). This question is "an individualized one, and must be determined on a case-by-case basis." *DePaoli v. Abbott Labs.,* 140 F.3d 668, 672 (7th Cir.1998). It is Bochenek's burden to present evidence indicating that she could meet her ultimate burden of showing she had an ADA-recognized disability. *Id.* Walgreens insists that Bochenek's obesity is not a disability, nor is her knee condition. *See* 29 C.F.R. § 1630, App. (noting that "except in rare circumstances, obesity is not considered a disabling impairment."). Bochenek agrees that obesity alone is not a disability, but contends that her knee condition qualifies as a disability.

■ Bochenek claims that her knee problems substantially limit her major life activities. Major life activities include "functions such as caring for one self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *Knapp v. Northwestern Univ.,* 101 F.3d 473, 480–81 (7th Cir.1996). "Substantially limits" means that "the individual is either unable to perform, or significantly restricted as to the condition, manner or duration under which the individual can perform, a major life activity as compared to an average person in the general population." *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 506 (7th Cir.1998).

Bochenek maintains that because of her knee problems, she has trouble sitting, standing, and walking. She also mentions that it was difficult for her to do the heavy lifting and moving required when the supply trucks came to the Walgreens store at night. (Pl. Dep. at 101) She states that if she sits for too long her leg becomes numb and she must stretch it; after she walks a few blocks she needs to stop for a second to rest before continuing; and her knee replacements are occasionally painful. (Pl.Dep. at 133–34) She does not offer any expert medical testimony to bolster her contention that she is substantially limited in walking or the other mentioned activities.

Walgreens counters that after her knee replacement surgeries, she was released to return to work without any restrictions. (Pl. Dep. at 71) She testified that though she has a knee condition, she had "no problem taking care of herself," and no problem performing manual tasks. (Pl.Dep. at 133) She was still able to perform her job at Walgreens, making her own accommodations to perform different tasks when her knees bother her. (Pl. Dep. at 101, 136)

Taking the evidence in the light most favorable to Bochenek, the Court finds that she is not substantially limited by her knee problems for the purposes of the ADA. *See Barker v. Andrew Corp.* 1997 WL 803866, *1–*4 (N.D.Ill.Dec.31, 1997) (finding no substantial limitation to walk where plaintiff took medication daily, could not take long walks, had a great deal of pain when he walked, and underwent back surgery); *Banks v. Hit or Miss, Inc.,* 996 F.Supp. 802, 806 (N.D.Ill. 1998) (finding no substantial limitation of an ability to walk where plaintiff underwent surgery and was released with restrictions, yet could walk without assistance).

Bochenek provides no evidence to suggest that Walgreens' employees believed that she could not perform her job solely because of her knee condition. The only proffered related incident occurred after Bochenek fell down some stairs in May 1966, when Ingram allegedly stated that she was "faking it and the doctor was writing her excuses as a favor." (Pl.'s Resp. to Def.'s Interrogs. at 14). While unkind, this statement only sup-

ports the argument that Ingram did not consider Bochenek to be disabled. Moreover, Bochenek testified that she did not know whether any Walgreens employees thought she could not perform her job because of her knee condition. (Pl.Dep. at 137)

Bochenek insists that some Walgreens employees thought she was "useless" because of her knee condition *coupled with* her obesity. (Pl.Dep. at 137) She believes so because they made comments about her weight. (Pl.Dep. at 137) Unfortunately, Bochenek does not show how the comments about her weight relate to the employees' belief about her alleged disability, her knee condition. Consequently, Bochenek is unable to show that she is disabled to the purposes of the ADA.

Second, Walgreens' claims that the circumstances surrounding Bochenek's discharge indicate that her alleged disability was not the reason for her discharge. Walgreens maintains that Bochenek cannot show that other employees were treated more favorably than she was because she cannot identify employees who had set their own prices for flush box items. In her deposition, Bochenek states that "other people" set the prices for and purchased flush box items and were not disciplined, but could not name them. (Pl. Dep. at 165–66)

Bochenek claims that the similarly situated employees are those who bought items out of the flush box. In her affidavit, Bochenek claims that she had purchased flush box items before, and names five employees as those who purchased flush box items and were not disciplined. She does not claim that these employees set their own prices for the items.

The evidence seems to indicate that Walgreens told Bochenek that she was terminated because she purchased flush box items, rather than specifically because she set her own prices for those items. When Bochenek purchased the items, the cashier allegedly told her that they "weren't allowed to buy anything out of the flush box anymore"; Mayes allegedly explained that she was called before him because she "bought stuff in the flush boxes," and that "it was considered theft for purchasing stuff in the flush

box." (Pl.Dep. at 153, 159, 163). Taken in the light most favorable to Bochenek, the Court finds that those employees similarly situated are those who purchased flush box items, rather than the narrower definition of those who set their own prices and purchased flush box items. The Court finds that Bochenek has provided enough evidence to preclude summary judgment on this issue. Unfortunately, because Bochenek has not shown that she is disabled, she does not satisfy the elements required for a prima facie case. As a result, Count I of Bochenek's claim must be **DISMISSED.**

Count II of Bochenek's claim asserts that Walgreens discriminated against Bochenek when it allegedly denied her promotional opportunities. This claim does not specifically mention the ADA, but it incorporates Count I by reference. The Court finds that the "discrimination" described in Count II is based on an alleged ADA violation. As explained above, Bochenek does not show that she is disabled for the purposes of the ADA, which prevents her from satisfying the required prima facie elements of an ADA claim. Therefore, the Court **DISMISSES** Count II of the complaint.

*Breach of Contract*

▮▮▮ In Count III, Bochenek claims that Walgreens breached its employment contract with her. Indiana law recognizes two types of employment: (1) employment for a definite or ascertainable term, and (2) employment at-will. *Butts v. Oce–USA, Inc.,* 1998 WL 310476, \*3 (S.D.Ind. June 5, 1998); *Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712, 717 (Ind.1997). Where there is no definite or ascertainable term of employment, the employment is at-will and is presumptively terminable at any time, with or without cause, by either party. *Orr,* 689 N.E.2d at 717; *Wior v. Anchor Indus., Inc.,* 669 N.E.2d 172, 175 (Ind.1996). "In Indiana, there is a strong presumption that employment is at-will." *Butts,* 9 F.Supp.2d at 1009, 1998 WL 310476, \*3. Indiana law "generally requires the employee to provide adequate independent consideration to convert an employment-at-will relationship into a relationship that the employer can terminate only for good cause." *Orr,* 689 N.E.2d at 714 (declin-

ing to construe an employee handbook as a valid unilateral contract).

In her deposition, Bochenek admits that she had neither a written employment contract nor an oral contract for term employment with Walgreens. (Pl.Dep. at 194) In her response brief, Bochenek insists that Walgreens applied its policy manual, disciplinary policy, and employee handbook standards in a discriminatory manner. She claims that this is enough to support a breach of contract action, but she cites no authority to support her argument. She offers no evidence of any adequate independent consideration that could convert her relationship with Walgreens into one where Walgreens could only terminate her for good cause. Moreover, Walgreens' policy manual states that "the progressive discipline policy is not a contract of employment between Walgreens company and any employee." Because Bochenek has not shown that her employment with Walgreens was for a definite or ascertainable term, the Court must presume that her employment was at will, and Walgreens could dismiss her at any time with or without cause. As a result, the breach of contract action is **DISMISSED.**

*Defamation*

▮▮▮ Bochenek claims that Walgreens defamed her by accusing her of theft. The elements of defamation are 1) a communication with defamatory imputation, 2) malice, 3) publication, and 4) damages. *Long v. Durnil,* 697 N.E.2d 100, 103 (Ind.Ct.App.1998); *Owens v. Schoenberger,* 681 N.E.2d 760, 763 (Ind.Ct.App.1997), *reh'g denied.* If a communication is defamatory per se, damages need not be specially pleaded or proved, and malice will be implied. 18 *Indiana Law Encyclopedia, Libel and Slander,* § 11. A communication is defamatory per se if it imputes criminal conduct. *Street v. Shoe Carnival,* 660 N.E.2d 1054, 1058 (Ind.Ct.App. 1996).

Because the alleged communication accused Bochenek with theft, it is most likely defamatory per se. *See, e.g., Agnew v. Hiatt,* 466 N.E.2d 781 (Ind.Ct.App.1984) (calling someone a "thief" is defamatory per se). This communication was published when Walgreens agents told other employees that

she was fired for theft. *See Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind.1992) (communicating employee evaluation information to management personnel may be considered published for purposes of a defamation action). Walgreens does not dispute that Bochenek satisfies all the elements of her defamation claim. Therefore, the Court assumes that Bochenek satisfies these elements.

■■■ Walgreens insists that because the alleged communication was true, Bochenek's defamation claim must be dismissed. Truth is a complete defense to a claim of defamation. *Associates Corp. of North America v. Smithley*, 621 N.E.2d 1116, 1119 (Ind.Ct.App. 1993). In *Smithley*, the court found that a letter to a former employee published among company personnel stating that employee was terminated for dishonesty was not defamatory. *Id.* at 1119. The court determined that the only implications drawn from the statements in the letter were that Smithley was dishonest, and that she was fired for being dishonest. Importantly, the court noted that neither party disputed that both of these implications were true. *Id.* In this case, the implications that may be drawn from the statements are that Bochenek was dishonest, and that Bochenek was fired because of her dishonesty. Bochenek insists that she was not dishonest and that she was fired for a reason other than her alleged dishonesty. Thus, the parallel drawn with *Smithley* is not perfect.

Bochenek seems to contend that "truth" is an issue for the jury. *Schrader v. Eli Lilly and Co.*, involved employees who sued their employer for defamation after being terminated for dishonesty. 621 N.E.2d 635 (Ind. Ct.App.1993), *opinion vacated*, 639 N.E.2d 258 (Ind.1994). The court stated:

> [The defendant] claims it should not be held liable for telling its own employees the same thing the former employees and their family members tell others to explain their terminations. [The defendant] should direct its truth argument to the jury. Simply stated, the circumstances and extrinsic facts must be considered in the determination about whether the words were "true" or carried a defamatory meaning.... Whether the words were "true" or not depends upon whether the jury determines the former employees stole from [the defendant] or not and also whether the jury determines the words were defamatory or not under the circumstances.

*Id.* at 640. Upon review of *Schrader*, the Indiana Supreme Court did not address the truth argument, and instead chose to focus on whether the statements were protected by the qualified privilege doctrine. 639 N.E.2d 258 (Ind.1994). The Court shall follow the example of the Indiana Supreme Court for it finds that the qualified privilege doctrine disposes of the issue.

■■■ Walgreens claims that the communication is protected by the qualified privilege doctrine. This doctrine protects "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Schrader*, 639 N.E.2d at 262. The privilege arises out of the necessity for full and unrestricted communication on matters in which the parties have a common interest or duty. *Chambers v. American Trans Air, Inc.*, 577 N.E.2d 612, 615 (Ind.Ct.App.1991). The defendant must establish the existence of a privileged occasion for the publication by proving that a recognized public or private interest justified the communication. *Conwell v. Beatty*, 667 N.E.2d 768, 779 (Ind.Ct.App.1996). Absent a factual dispute, whether the qualified privilege protects a statement is a question of law. *Id.*

■■■ Once the privilege is established, the plaintiff must prove that the defendant abused the privilege. The plaintiff may do so by presenting evidence that: (1) the communicator was primarily motivated by ill will; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth. *Schrader*, 639 N.E.2d at 262; *Van Eaton v. Fink*, 697 N.E.2d 490, 1998 WL 414632, *4–*5 (Ind.Ct.App. July 24, 1998). "The essential elements of the de-

fense of qualified privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner to the appropriate parties only." *Schrader,* 639 N.E.2d at 262; *Shallenberger v. Scoggins–Tomlinson, Inc.,* 439 N.E.2d 699 (Ind.Ct. App.1982).

Walgreens maintains that this case invokes the qualified privilege doctrine because the communication about firing Bochenek for theft concerned the business of Walgreens, in particular, finding a replacement for Bochenek. "Intracompany communications regarding the fitness of an employee are protected by the qualified privilege, in order to accommodate the important role of free and open intracompany communications and legitimate human resource management needs." *Schrader,* 639 N.E.2d at 262; *Bals,* 600 N.E.2d at 1356; *Chambers,* 577 N.E.2d at 615. In her response brief, Bochenek seems to concede that the communication falls within the qualified privilege doctrine. Therefore, the Court will assume the communication invokes the privilege.

Bochenek contends that Walgreens abused its qualified privilege by acting with ill will and by excessive publication. She states that Walgreens "cannot avoid a showing of malice or ill-will under [the qualified immunity] standard which negates the privilege." As previously mentioned, it is Bochenek's burden to demonstrate Walgreens' ill will. *See Schrader,* 639 N.E.2d at 262.

■■■ A plaintiff does not show an abuse of the qualified privilege merely with unsubstantiated allegations and bald assertions that a supervisor acted maliciously. *Ernst v. Ind. Bell Tel. Co.,* 475 N.E.2d 351, 356 (Ind. Ct.App.1985). Bochenek does not attempt to highlight any evidence to support her argument, and the Court will not make her argument for her. *Hershinow v. Bonamarte,* 735 F.2d 264, 266 (7th Cir.1984) (refusing to consider an argument that was briefed in a "perfunctory and underdeveloped [ ] manner"); *see Weissman v. Weener,* 12 F.3d 84, 86 (7th Cir.1993) ("[J]udges should be hesitant to wander too far astray ... in their search for the correct legal result ... from the arguments presented to them by the

parties. Where judges do so, one consequence is to 'diminish the responsibility of lawyers and to reduce competition among them.' "). As a result, Bochenek has not satisfied her burden of providing evidence of ill will.

Bochenek contends that Walgreens excessively published the communication. In support, she states that her "sister and daughter advised [her] and can testify that there was excessive publication and that statements were made in front of customers." She also mentions that her neighbor, a "non-employee" of Walgreens, asked her to explain why she was fired to theft.

■■■ Bochenek's sister, a Walgreens employee at a different location, was present when her manager, Joyce DeRolf ("DeRolf"), made an announcement to office personnel. "[DeRolf] made sure she stressed that the night manager in the Schererville store was fired for theft over the weekend so they had to have a replacement.... But there was no names mentioned." (Pl.Dep. at 53–54). Where an agent is not acting within the scope of his employment, the employer cannot be held liable for defamatory comments. 18 Libel & Slander, Ind. Law Encyc., § 72 (1959). *See Tacket v. Delco Remy Div. of General Motors Corp.,* 678 F.Supp. 1387, 1393 (S.D.Ind.1987), *rev'd in part on other grounds,* 836 F.2d 1042 (7th Cir.1987). Even if DeRolf's comment was made within the scope of DeRolf's employment, it was not excessively published because it was made to Walgreens' "assistants" in order to find a replacement for the position. *See Schrader,* 639 N.E.2d at 262 (finding no excessive publication where 1,500 employees were notified about plaintiff's termination). Moreover, DeRolf did not mention Bochenek's name when she stated that the night manager at another store had been fired for theft. While Bochenek claims that DeRolf and her sister knew she was talking about Bochenek because "we knew [DeRolf] real well," she does not indicate that any of the other assistants knew DeRolf was discussing Bochenek. (Pl.Dep. at 53–54)

■■■ According to Bochenek's deposition, employees made comments to her daughter

(a Walgreens employee at yet another location) about Bochenek being fired for theft, and Bochenek's neighbor allegedly overheard "two girls" in Walgreens discussing Bochenek's termination. (Pl.Dep. at 182–83, 192). Bochenek does not identify these employees. Without knowing which Walgreens' employees made the comments heard by her daughter and neighbor, it is not possible to determine whether the employees made the comments within the scope of their employment. Furthermore, a person who originates a defamatory comment is not liable for an independent or unauthorized republication by another person. 18 Libel & Slander, Ind. Law Encyc., § 43 (*citing Sourbier v. Brown,* 188 Ind. 554, 123 N.E. 802 (1919) and *Wayne Works v. Hicks Body Co.,* 115 Ind.App. 10, 55 N.E.2d 382 (1944)). When Bochenek's daughter told Mayes about the comments, he "was upset, and he said, 'I told them not to tell anybody in the stores so that there was no harm done to anybody.'" (Pl.Dep. at 187) Mayes' statement indicates that Walgreens did not authorize any republication. Bochenek provides no evidence to indicate that this republication was authorized. As a result, she does not show that Walgreens abused the qualified privilege doctrine. Because the alleged statements fall under the qualified privilege doctrine, Count III must be dismissed.

## CONCLUSION

For the reasons set forth above, the Court now **GRANTS** Walgreens' Motion for Summary Judgment. The Clerk is **ORDERED** to dismiss this case with prejudice.